**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**CHRISTIAN DANIEL RILLORAZA**                                    **PLAINTIFF**

**v.**                                    **Case No. 4:25-cv-00179-JM**

**LITTLE ROCK POLICE DEPARTMENT,** *et al.*                     **DEFENDANTS**

## ORDER

Pending are Rilloraza's motion for Rule 11 Sanctions (Doc. 19), motion for permission to use CM/ECF (Doc. 24), and motion to file a third amended complaint (Doc. 26) as well as Defendants' motion to dismiss (Doc. 15). For the reasons set out below, Rilloraza's motions (Doc. 19, 24, 26) are DENIED, and Defendants' motion to dismiss (Doc. 15) is GRANTED.

### I.     Procedural Background

Plaintiff Christian Rilloraza filed this *pro se* action on March 3, 2025. (Doc. 2). The Court screened the complaint, narrowed the claims and defendants, and issued summonses. (Doc. 3, 7). As allowed under Fed. R. Civ. P. 15 and with  the Court's permission (Doc. 10), Rilloraza filed a second amended complaint. (Doc. 11). In that pleading, Rilloraza realleged claims against previously served defendants (Nicole Walsh and John Lundberg) as well as against previously dismissed defendants (Little Rock Police Department ("LRPD") and the City of Little Rock("the City")) and added claims against newly named defendants (the Arkansas School for the Deaf ("ASD") and the Arkansas Department of Education ("ADE")). (Doc. 11). Before the Court could screen the second amended complaint, separate Defendants Walsh, Lundberg, ASD, and ADE moved to dismiss the second amended complaint. (Doc. 15). The City and LRPD remain unserved because summonses were not issued following the Court's screening of the initial complaint.

Rilloraza's opposed motion to file a third amended complaint (Doc. 26) is denied. Fed. R. Civ. P. 15 (a). Rilloraza's motion for rule 11 sanctions (Doc. 19) is also dismissed as he has since withdrawn the motion (Doc. 22). That motion (Doc. 19) is DENIED. Likewise, Rilloraza's motion for permission to use CM/ECF (Doc. 24) is DENIED because the Court's electronic filing is limited to lawyers. See Rule II(A) of the CM/ECF Administrative Policies and Procedures Manual for Civil Filing; adopted by General Order 53. The Court must address Defendants' motion to dismiss (Doc. 15).

## II.    Factual Background

Rilloraza's claims arose when, on February 6, 2025, he was asked to leave a basketball tournament held at the ASD. (Doc. 11 at 2). Having received information from a visiting school's coach that Rilloraza made one participant feel "unsafe," Walsh, the ASD superintendent, asked Rilloraza to leave the property. (*Id*.). While initially compliant, Rilloraza returned to the school and met ASD's security guard Lundberg, who notified LRPD. (*Id*.).

After speaking with Lundberg and Walsh, the responding LRPD officer spoke with Rilloraza and said, "Long story short, we understand that you may be dealing with someone underage, which is inappropriate and probably illegal." (*Id*. at 4). Rilloraza responded by saying, "No, that happened in Iowa . . . that doesn't have anything to do with this situation." (*Id*.). In response, the Officer said, "you're here now and that underage person is here now – which makes it 100% my business." (*Id*.). Under threat of criminal charges should he stay, Rilloraza left the property after what he alleged was an unconsensual search. (*Id*. at 3). Rilloraza argues the LRPD officer used "unrelated past events" to force him to leave. (*Id*.). He then argues that the student who reported her concern about his presence was seventeen, which he says was "above the legal

age of consent." (*Id*.). Rilloraza concludes by arguing he was wrongly forced to leave based "entirely on unsubstantiated fear rather than any legal or factual basis." (*Id*.).

Rilloraza sued under 28 U.S.C. § 1983 alleging that defendants infringed his right to assemble, searched him, and had no probable cause to ask him to leave in violation of his First, Fourth, and Fourteenth Amendment rights. (*Id*. at 8–9). He also alleges that the LRPD based its decision to oust him on an unconstitutional City policy that encourages officers to rely on unverified third-party claims.  Rilloraza, who is deaf, further argues that the City failed to train its officers with regard to disability protections under the Americans with Disabilities Act ("ADA") and under §504 of the Rehabilitation Act. ("RA"). Specifically, he argues that he was unlawfully excluded from the tournament because of his disability. (*Id*. ). He seeks to enjoin ASD from preventing his future attendance at events and damages. (*Id*. at 9).

### III.   Discussion

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### A.   Constitutional Claims

In screening Rilloraza's initial complaint, the Court determined that his § 1983 claims against the City and LRPD could not survive. (Doc. 3 at 2; Doc. 7 at 2). Nothing in Rilloraza's

second amended complaint changes those rulings. The LRPD is not an entity that can be sued. *Nix v. Norman*, 879 F.2d 429, 431–32 (8th Cir. 1989). And Rilloraza's attempt to create municipal liability by alleging it has a history of relying on unverified bystander accounts to support unconstitutional behavior is conclusory at best. *Corwin v. City of Independence, Missouri*, 829 F.3d 695, 699 (8th Cir. 2016); *Twobly*, 550 U.S. at 570. As a result, Rilloraza's § 1983 claims against the City and LRPD are dismissed. Likewise, the Eleventh Amendment bars Rilloraza's damages claims against both the ASD and the ADE; therefore, those claims are dismissed. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (the State and its agencies are immune from suit); *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Recognizing that the sovereign immunity also prevents his official capacity claims against Walsh and Lundberg, Rilloraza also abandons those claims. (Doc. 17 at 1). Accordingly, those claims are dismissed.

That leaves Rilloraza's § 1983 individual-capacity claims against Walsh and Lundberg. When screening his original complaint, the Court noted that, based on the facts then alleged, the liability of the individual defendants was tenuous but, for screening purposes only, served Rilloraza's first amendment claims. (Doc. 3). Rilloraza, however, has since given more context to the events supporting his claims against Walsh and Lundberg. (Doc. 11). Based on this new information, set out above, the Court grants Defendant's motion to dismiss § 1983 claims against them.

Rilloraza's Fourth Amendment claims can be immediately dismissed because his assertion that Walsh or Lundberg acted in concert with LRPD to search or seize him is unfounded. (Doc. 17 at 2). His constitutional arguments against these defendants really hinges on his belief that he had an inviolable right to be on the property and that these defendants had a duty to verify the truth of the visiting student's claims before asking him to leave. Neither assertion is true. Plainly, the first

amendment does not create an unlimited right to access all public spaces at all times. Rather, the ASD tournament was serving as a limited public forum. Assuming (without deciding) that attendance at a sporting event held at a public school rises to an assembly contemplated by the First Amendment, Rilloraza has not shown that his right to be there was unconstitutionally infringed. School administrators have the authority to assure "'third parties conduct themselves appropriately on school property' and that they do not engage in disruptive or 'threatening conduct that disturbs the tranquility of schools.'" *Johnson v. Perry*, 859 F.3d 156, 173 (2nd Cir. 2017) (citing *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999)).

Despite Rilloraza's assertions otherwise, it is apparent that his presence on campus was causing a disturbance, if to no one other than the minor invitee who reported feeling unsafe. That the previous interactions occurred in another state or that she was then 17-years old is of no moment. The school was free to regulate access to its gym in a viewpoint-neutral manner, for the safety of its guest. *Perry*, 859 F.3d at 175. Furthermore, Rilloraza's attempt to deflect the merits of student's concerns by pointing out that it happened in another state, really only served to confirm Defendants' concerns and bolster their request that he leave the property. Further, nowhere in his pleadings does Rilloraza assert that Defendants banned him from the property or from attending future events. Rather, they asked him to leave that single event on that single day. As a result, Rilloraza's individual-capacity damages claims against Walsh and Lundberg are dismissed as is his request for injunctive relief.

### B.    Disability Claims

Rilloraza next asserts that he was unlawfully excluded from the ASD tournament in violation of the ADA and RA because he is deaf. (Doc. 11 at 8). In his response to the motion to

dismiss, he clarifies that he his only asserting his ADA and RA claims against the ASD and against the ADE. (Doc. 17 at 4).

The ADA and RA prevent disability discrimination. *See* 42 U.S.C. § 12132 (ADA); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013)(quoting 29 U.S.C. § 794)(RA)). Rilloraza offers absolutely no grounds for either an ADA or RA claim other than his assertion that the ASD and ADE "refused to explain why he was being removed and failed to clarify who made the report." (Doc. 18 at 2). Nothing in his pleadings suggests that he was discriminated against, foremost. Nor does Rilloraza offer support for his theory that he was asked to leave because he was deaf. Rather, it is apparent that Rilloraza understood full well why he was being asked to leave, attempted to contest the grounds for the request by arguing they were based on events that happened in another state, and simply did not agree with that decision. His discontent did not amount to disability discrimination.

This case is dismissed without prejudice.

IT IS SO ORDERED this 23rd  day of February, 2026.

_____
UNITED STATES DISTRICT JUDGE